Susanne Berry HOWARD, Individually and in her capacity as Personal Representative of the Estate of John Eager Howard, Jr., and as Personal Representative of the Estate of Robert Berry Howard, a minor, Appellant,

v.

McCRORY CORPORATION, Successor to Best & Company, a Delaware Corporation, and S. S. Kresge Company, a Michigan Corporation, and Standard Knitting Mills, Inc., a Tennessee Corporation, Appellees.

No. 77–2527.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 2, 1978.

Decided June 25, 1979.

Francis N. Iglehart, Jr., Towson, Md. (Leonard Decof, Providence, R. I., on brief), for appellant.

H. Emslie Parks, Towson, Md. (T. Bruce Hanley, Wright & Parks, Towson, Md., on brief), Jeffrey B. Smith, Baltimore, Md. (Michael A. Pretl, Smith, Somerville & Case, Baltimore, Md., on brief), R. Roger Drechsler, Baltimore, Md. (J. Paul Mullen, Lord, Whip, Coughlan & Green, Baltimore, Md., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and RUSSELL and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a products liability case. The products involved are a cotton terry cloth robe and a cotton knit, plastic-footed sleeper set of pajamas. The robe was purchased on December 5, 1969, at Best & Company, a subsidiary of the defendant McCrory Corporation (hereafter designated McCrory), and had been supplied McCrory allegedly by the defendant Tom & Jerry Boys Wear, Inc. (hereafter designated Boys Wear). The pajamas, with the K–Mart label, bearing the designation "Pac-Nit," were purchased approximately April 12, 1971, at the S. S. Kresge Company (hereafter designated Kresge), and were allegedly furnished Kresge by the defendant Standard Knitting Mills, Inc. (hereafter designated Standard).

The alleged defect in the products was that they were "inherently dangerous, highly flammable and not reasonably safe for children to wear." The action concerns serious burns sustained by Robert Berry Howard (hereafter designated Bobby), an infant three years of age, when his pajamas and bathrobe ignited in some unexplained way while the infant was playing, unattended in the den of his parent's home, on the morning of April 19, 1971. As a result of his burns, the infant was hospitalized from April 19, 1971, until his death on June 14, 1971.

In her original complaint, filed December, 1973, the plaintiff, the mother and surviving parent of Bobby, sought damages (1) individually for Bobby's alleged wrongful death under the Maryland Wrongful Death Statute, (2) as personal representative in the estate of Bobby for the pain and suffering sustained by him between the date of his injuries and his death, and (3) as personal representative of her deceased husband for medical and funeral expenses incurred, as well as for her deceased husband's claim for grief and the loss of Bobby's companionship during the weeks that he survived Bobby.[1] The initial defendants were McCrory, Kresge and Indian Head, Inc.[2] On June 13, 1974, Boys Wear and Standard were added as defendants. Plaintiff based her right of action on alleged claims of negligence, strict liability and breach of implied warranty of merchantability. The cause of action for wrongful death was, on motion, dismissed by the district court as barred by the applicable Maryland statute of limitations. The district court, also, before trial dismissed the warranty claim against McCrory as time-barred. The claim of the husband's estate for medical and funeral expenses was dismissed as to the defendants Boys Wear and Standard. A motion by the plaintiff for leave to file a second amended complaint setting forth a claim for burns she suffered in attempting to rescue her son

and for mental shock and anguish suffered by the plaintiff from seeing her child engulfed in flames, was filed almost two and a half years after the commencement of the action and more than three years after the cause of action arose. In neither the original nor the first amended complaint was there any suggestion of such a cause of action. The district court held that under those circumstances, the action could not relate back to the date of the original or first amended complaint and, absent such relation back, the proposed new claim was barred by the appropriate Maryland statute of limitations. The district court also assigned as an additional discretionary reason for the denial of the motion, the inexcusable delay in filing such motion.

After the issues had been narrowed by these rulings on the various preliminary motions by the parties, the action came on for trial before a jury, and was submitted to the jury as to all defendants on the issues of negligence and strict liability, and on breach of implied warranty only as to Standard and Kresge. The jury returned verdicts in favor of Standard and Boys Wear "because the jury had concluded that plaintiff [had] failed to prove her allegations that each had manufactured clothing worn by Bobby Howard." Judgment was accordingly entered in favor of such defendants on the basis of the jury verdicts. The jury was unable, however, to agree upon a verdict in the actions against Kresge and McCrory, and, as to them, the district court declared a mistrial. After entry of judgments in favor of Standard and Boys Wear, the plaintiff moved that the jury verdicts in favor of such defendants be set aside, the judgments vacated and new trials granted. The defendants Kresge and McCrory in turn moved for judgments n. o. v. in their favor. The district court denied plaintiff's motion to set aside the verdicts and judgments in favor of Standard and Boys Wear but granted the motions of Kresge and

---

1. The husband-father died some months after Bobby's death.

2. Summary judgment was granted in favor of the defendant Indian Head, Inc. on the ground

that it was not involved. Plaintiff dismissed her appeal as to Indian Head, Inc. and we have accordingly disregarded such defendant.

McCrory for judgments n. o. v. in their favor. From the judgments entered, in accordance with the district court's order on the motions, the plaintiff appealed, assigning a number of errors. After appeal had been noticed, the plaintiff abandoned her claim of error in the district court's refusal to set aside the verdict and judgment entered in favor of Boys Wear and that judgment is no longer an issue in this appeal.

■ We address first the ruling by the district court on the preliminary motions. The plaintiff claims error in the district court's dismissal of her wrongful death action. Concededly this cause of action arose at the time of Bobby's death on June 14, 1971. The original complaint in the action was not filed until December 28, 1973. On June 14, 1971, the applicable Maryland statute of limitations for wrongful death was two years, measured from time of death.[3] In 1971 this statute was amended extending the limitations period from two to three years, effective as of July 1, 1971.[4] The district court found that the Maryland Court of Appeals in *Slate v. Zitomer* (1975) 475 Md. 534, 341 A.2d 789, had "held that [the] legislative extension of the limitation period from two to three years effective July 1, 1971, did not affect causes of action which arose between July 1, 1969 and June 30, 1971." The present case falls within that excepted class and the bar of the statute was thus not extended by the amendment of 1971. In 1976, however, the legislature of Maryland enacted a statute which, under the plaintiff's construction, gave the benefits of the amendments of 1971 to actions which arose subsequent to July 1, 1969.[5] At the time the statute of 1976 was enacted, however, the proposed action of the plaintiff for wrongful death had already been long barred. The Maryland Court of Appeals has held that the stat-

ute of 1971 was ineffectual in reviving actions such as that sought to be alleged by plaintiff which were barred at the time of its enactment.[6] That construction of the Maryland statute is controlling and the district court properly so ruled.

■ The plaintiff also complains of the denial by the district court of her motion to file a second amended complaint, setting up an entirely new cause of action not suggested in the original or amended complaint for physical injury arising out of "burns about the hands and wrists" of the plaintiff-mother, and for "mental shock and anguish," sustained by her individually.[7] The bar of the statute had accrued before the amendment was proposed, since the proposed amended cause of action setting forth an entirely new cause of action could not relate back to the original filing of the action under either the state or federal rule. *Morrell v. Williams* (1976) 279 Md. 497, 366 A.2d 1040, 1044–45; *Griggs v. Farmer* (4th Cir. 1970) 430 F.2d 638, 639; *Schoonfield v. Mayor and City Council of Baltimore* (D.Md.1975) 399 F.Supp. 1068, 1090, aff'd. 544 F.2d 515 (4th Cir.). It must be conceded, too, that the plaintiff was exceedingly tardy in asserting this new claim, known to her from the date of the fire three years earlier, and the district court's denial of the right to file the second amended complaint on this, and other assigned grounds, would not have been an abuse of discretion, even if this new claim had not been barred by the statute of limitations. *Freeman v. Continental Gin Company* (5th Cir. 1967) 381 F.2d 459, 468–69.

We turn now to the disposition of the motion of the plaintiff for a new trial and the defendants' motions for judgments n. o. v. Since the plaintiff has abandoned her motion as far as Boys Wear is concerned, our first inquiry under plaintiff's motion is

---

**3.** Annotated Code of Maryland 1957, 1970 Repl. Vol. Art. 67, § 4(a).

**4.** Acts of 1971, Chapter 784.

**5.** Acts of 1976 Chapter 614.

**6.** *Smith v. Westinghouse Electric Corp.* (1972) 266 Md. 52, 291 A.2d 452.

**7.** This is an action which owes its basis to an amendment of the Maryland Wrongful Death Statute. *See Smith v. Westinghouse Electric Corp., supra,* 291 A.2d at 454.

directed at the denial of plaintiff's motion to set aside the jury verdict and judgment absolving Standard.

There was an issue in the case whether Standard was the manufacturer of the pajamas worn by Bobby at the time he was burned. The nearest the plaintiff came in proof on this point was evidence that Standard had sold sleeper pajamas marked "Pac-Nit," under the K–Mart label, to Kresge during the years when the pajamas in question were purchased. She failed to prove, however, that Standard was the sole supplier. And "Pac-Nit" was a trademark, licensed for use by a number of other manufacturers than Standard. Whether Standard was the manufacturer was unquestionably a question for the jury under these circumstances. The jury resolved that issue, under the district court's construction of the jury's answers to interrogatories submitted to it, in favor of Standard. We cannot say that the refusal of the district court to set aside the jury's finding to that effect was an abuse of discretion.

The serious question in the case is raised by the plaintiff's appeal from the district court's grant of judgments n. o. v. in favor of Kresge and McCrory. The issue on review of a granted judgment n. o. v. is whether the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern Ry.* (1943) 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239. In resolving that issue, we are "bound to view the evidence in the light most favorable to [plaintiff] and to give [her] the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Co. v. Union Carbide* (1962) 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777. Measured by these standards, we are of the opinion that the judg-

ments n. o. v. in favor of Kresge and McCrory must be reversed.

The district court granted judgment n. o. v. in favor of kresge because of what it found to be the absence of proven tests for flammability performed either on a remnant of the pajamas worn by Bobby at the time of the accident or on any other pajamas like those worn by Bobby. It concluded from this absence of any tests on any remnants of the pajamas worn by Bobby at the time of the fire, or of any pajamas similar in character to those worn by Bobby, there was no evidence in the record from which the jury could find that the pajamas were defective as charged. And this was apparently the basis for the grant of judgment n. o. v.

Without faulting for the moment the district court's rulings on the relevancy of the flammability tests performed on other products claimed by the plaintiff to be similar to the pajamas worn by Bobby at the time of the accident, we are of the opinion that the court erred in concluding that the evidence was insufficient, under our liberal rule as declared in *Wratchford v. S. J. Groves & Sons Company* (4th cir. 1969) 405 F.2d 1061, 1066–67, to permit the submission to the jury of the issue of Kresge's liability. Contrary to the district court's conclusion, proof of the dangerous inflammability of the pajamas is not restricted to the results of tests on such product conducted by experts. It has been held that, even where all the standard tests demonstrated that a product was not dangerously inflammable for use by infants, it is perfectly permissible for the jury to find that the product was dangerously inflammable from evidence of its "burning behavior and characteristics" and from proof that the product "ignited easily, [and] burned rapidly and intensely with a high degree of heat." [8]

8. *LaGorga v. Kroger Company* (W.D.Pa.1967) 275 F.Supp. 373, 378, *aff'd.* 407 F.2d 671; *Di Maso v. Wieboldt Stores, Inc.* (1976) 37 Ill. App.3d 966, 347 N.E.2d 466, 473.

In *Di Maso*, the product as here was pajamas and the injured party was a child six years of age. The child suffered severe burns when the

pajamas became ignited. There was considerable proof that the child had been playing with matches at the time the pajamas caught fire. The court stated the question of the unreasonable dangerousness of the pajamas was to be resolved by determining "whether when once ignited the article was unreasonably dangerous

There was such evidence in this case with respect to the pajamas. When first seen, the flames were shooting a foot over Bobby's head and Bobby looked much like a ball of fire. Such evidence would indicate that the clothing worn by Bobby ignited quickly and burned rapidly with intensity. That evidence was sufficient to require the submission to the jury of the issue of the unreasonable flammability of the pajamas. That being so, the district court should not have granted judgment n. o. v. in Kresge's favor but should have set the action for retrial.

■ The decision granting judgment n. o. v. in favor of McCrory proceeded along somewhat different lines. There were tests made on the belt of the bathrobe purchased from McCrory and on another material found by the experts to be similar in flammability characteristics to that in the bathrobe. The regulations issued under 15 U.S.C. § 1191 *et seq.* prescribe a test known as CS 191–53 for determining a product's flammability. The regulation does this by placing the product in one of three classifications of flammability on the basis of the test. Class one under the regulation is "normal" flammability and means the product is authorized for sale without warning. The tests made under the strict terms of CS 191–53 placed the robe in class one under the regulation. There was another test,

known as NFPA 702, established by the National Fire Protection Association. The results under this test were similar to those under the strict terms of CS 191–53. The expert witness for the plaintiff criticized the reliability of the test prescribed in CS 191–53. He sought to establish its serious deficiency by pointing out that a newspaper would qualify as of merely normal flammability under the test. He conducted another test, suggested, but not prescribed by the regulation setting forth CS 191–53. This other test consisted of "visual observation of flame intensity for the purpose of assisting in a judgment of suitability of a fabric for clothing." The district court recognized that this test was "suggested" in the regulation but because, unlike the measurement of "speed of ignition and speed of flame" in the exactly prescribed test, this additional test was only a "suggested procedure" and was subject to "inherent vagueness," the district court seems to have given no weight to this test and to have based his conclusion on the motion for judgment n. o. v. on the two standardized tests under CS 191–53 and NFPA 702. In our opinion, the reliability of this additional test and the weight to be given its results were properly questions for jury determination. Compliance with federal standards, while plainly relevant, is not conclusive on the issue of McCrory's liability and the jury is entitled to consider any other reasonable evidence on the issue.[9]

---

in the manner and speed in which it burned." Thus, the manner in which the pajamas burned may be sufficient to establish the unreasonable dangerousness of a fabric.

See, also, *New Amsterdam Casualty Co. v. Baker* (D.Md.1947) 74 F.Supp. 809 at 810, where Judge Chestnut said, commenting on *Deffebach v. Lansburgh & Bro.* (1945) 80 U.S. App.D.C. 185, 150 F.2d 591:

"* * * The court decided as a matter of law that if the robe caught fire and burned, as the witness testified, there was a breach of Lansburgh's implied warranty of fitness."

See, also, *Bellotte v. Zayre Corp.* (1st Cir. 1976) 531 F.2d 1100, 1102–03 and note 3; and *Bunny Bear, Inc. v. Peterson* (1st Cir. 1973) 473 F.2d 1002, 1006–07.

9. The federal standards are relevant on the issue of whether the bathrobe was "unreasonably dangerous for use as clothing" for infants of tender years, but are not conclusive on such

issue and the jury is entitled to consider any other reasonable evidence on that issue. *Raymond v. Riegel Textile Corporation* (1st Cir. 1973) 484 F.2d 1025, 1027; and *Sherman v. Lowenstein & Sons, Inc.* (1967) 28 A.D.2d 922, 282 N.Y.S.2d 142, 143–44. In the latter case, the court said:

"Last, we note that, in reversing the judgment, we reject defendant Lowenstein's argument that it cannot be held liable because, in manufacturing the fabric used in making the pajamas, it complied with the flammability-testing method prescribed by law (Tit. 15 U.S.C. § 1191; General Business Law, § 502). While a defendant's compliance with a statute 'is some evidence of the exercise of due care' (*Phillips v. Roux Labs.*, 286 App.Div. 549, 551, 145 N.Y.S.2d 449, 451), it does not preclude a conclusion that he was negligent (see, 2 Harper & James, The Law of Torts, § 17.6, p. 1014 [1956] )."

The evidence of the additional test and the circumstances of the fire itself, to which we referred in the discussion of Kresge's liability, warranted the submission of McCrory's liability to the jury; *ergo*, it was error for the district court to grant judgment n. o. v. in favor of McCrory later on the theory of error in the submission of such issue to the jury.

The judgment of the court in favor of the defendant Standard is accordingly affirmed but the judgments n. o. v. in favor of the defendants Kresge and McCrory are reversed and the actions against them are remanded to the district court for a new trial.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED WITH DIRECTIONS.