RUDOLFO SANCHEZ, Plaintiff-Appellant, *v.*
THE BLACK BROTHERS CO., Defendant-Appellee.

First District (3rd Division)    No. 79-636

Opinion filed July 2, 1981.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Nat P. Ozmon and Curt N. Rodin, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, and Richard H. Donohue, of counsel), for appellee.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Rudolfo Sanchez, brought this product liability action against defendant, The Black Brothers Co., to recover damages for injuries sustained to his right hand while attempting to clean a glue spreading machine manufactured by defendant. A jury returned a verdict for defendant. On appeal, plaintiff raises the following issues: (1) whether the trial court improperly admitted evidence of plaintiff's conduct and whether defense counsel's closing argument improperly referred to plaintiff's conduct; (2) whether the trial court erred when it refused plaintiff's instruction No. 1; and (3) whether the trial court erred when on cross-examination it refused to permit plaintiff to impeach defendant's expert witness on the basis of a speech he had given to a group of engineers. We reverse and remand for a new trial because of the error involving the cross-examination of defendant's expert witness.

We first address the issue of the admissibility of evidence relating to plaintiff's conduct at the time of the accident. Basically, plaintiff contends that because plaintiff's negligence is not an issue in a product liability case, evidence of plaintiff's conduct in using the machine at the time of the occurrence should not have been admitted. Plaintiff also argues that a set of 11 point-cleaning instructions should not have been admitted for the same reason. We disagree. The liability issue in a product liability case cannot be tried in a vacuum in which the product is isolated. Rather, the jury should be fully informed as to how the incident occurred and how the plaintiff was using the product at the time of the occurrence.

Moreover, since a trial is an adversary proceeding, both plaintiffs and defendants have a right to introduce evidence to prove their respective theories of the case. Here, defendant's theory of defense was that the machine was not unreasonably dangerous and that the sole proximate cause of plaintiff's injury was the conduct of plaintiff's employer in failing to properly instruct plaintiff regarding the proper procedure for cleaning the machine. If this theory is established by the evidence, the defendant would not be liable. *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 641, 340 N.E.2d 276, 281; *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 646, 274 N.E.2d 828, 831; *Santiago v. Package Machinery Co.* (1970), 123 Ill. App. 2d 305, 312, 260 N.E.2d 89, 93.

■■ The evidence to establish this defense theory would necessarily consist of the cleaning instructions supplied and published by defendant, the conduct of the employer in instructing plaintiff, and the manner in which plaintiff was operating or cleaning the machine at the time of the occurrence. It follows that this evidence was admissible even though plaintiff's negligence was not an issue in the case. (*Stanfield,* 34 Ill. App.

3d 635, 641, 340 N.E.2d 276, 281.) On this basis, we do not find error in the admission of the evidence.

The fact that there was no error in the admission of evidence which might tend to establish defendant's theory of defense is important in evaluating the propriety of defense counsel's closing argument. Defense counsel told the jury:

> "MR. TOBIN: These instructions appear on the side of the machine in question.
>
>     ❋  ❋  ❋
>
> And if you recall, Mr. Wood testified to every one of the 11 instructions that were involved concerning the machine and that the first one is to have your hand on the bar at all times.
>
>     ❋  ❋  ❋
>
> And Mr. Wood testified that when you clean the machine, you have your hand on the bar.
>
>     ❋  ❋  ❋
>
> And that when you have that and you have the hose in the other hand, you have control.
>
> If something happens and you start it, it goes forward, and it stops and reverse, so when you are cleaning it and you follow the method that was designed, the machine is not unreasonably dangerous, because if a man does slip, he has hold of this bar that extends the entire length of the machine.
>
>     ❋  ❋  ❋
>
> And it doesn't make any difference what level it's at, whether it's at the level that Mr. Sanchez had it at [his place of employment] or whether it's at the level which it's shipped.
>
> If he has his hand on that and he slips, he is not going to get himself entangled in that machine one way or another."

■■ Since defense counsel's remarks were directed to evidence which was properly admitted and to reasonable inferences to be drawn from that evidence to establish defendant's theory of defense, we find no fault in these remarks. (See *Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 788, 324 N.E.2d 34, 44; *Maguire v. Waukegan Park District* (1972), 4 Ill. App. 3d 800, 805, 282 N.E.2d 6, 9.) There was no allusion in the argument to plaintiff's negligence barring his recovery. Rather, the argument plainly relates to the issue of proximate cause and the issue of whether the machine was unreasonably dangerous. When viewed in that context, it is a proper argument.

■■ We next address the judge's refusal to give plaintiff's instruction No. 1. The instruction states:

> "If you decide that the plaintiff has proved all the propositions of

this case, then it is not a defense that the plaintiff may have done anything which may have contributed to cause his injury."

This instruction has the effect of a negative instruction, that is, it tells the jury not to do something with respect to a particular element of the evidence. Generally, negative instructions are to be avoided. Also, plaintiff's Instruction No. 1 singles out for comment by the court a particular item of the evidence which is not a triable issue in the case. This is improper even though the instruction may be a correct statement of the law. *Cf. Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 601, 418 N.E.2d 980, 985-86 (where the court held that an IPI instruction which was a correct statement of the law should not have been given because it did not involve a triable issue in the case).

These conclusions are in accord with the policy of the Illinois Supreme Court Committee on Jury Instructions. In the Forward to Illinois Pattern Instructions, Civil (2d ed. 1971) (hereinafter IPI) it is stated at pages VI-VII:

"The criteria underlying the Committee's policies bears restatement:

First, the Committee has been opposed to negative instructions, that is, instructions which tell the jury to not do something.

Second, the Committee has not recommended instructions which single out a particular item of evidence for comment, even where there is judicial authority for the instruction.

* * *

Fourth, and perhaps most important, the Committee has opposed over particularizing. It has preferred to rely upon one instruction which is general in nature and has avoided creating a number of instructions on a subject which is adequately covered by the single general instruction.

Underlying all these considerations has been a major policy. We have viewed the problem of communicating law to the jury as one best handled by a partnership between court and trial counsel rather than by the court alone. The Court will in understandable language fairly state the law, permitting counsel on each side to supply adversary emphasis, rather than try to neutralize partisan instructions, sounding first like plaintiff's counsel and then in the next sentence like defense counsel. In brief, on many occasions when the Committee has rejected an instruction, it has felt not so much that the point ought not be told to the jury, but rather that it should be told to the jury by counsel rather than by the Court."

■■ Accordingly, the court should not instruct the jury as to the insignificance of plaintiff's conduct in a product liability case. Counsel in his

closing argument may adequately inform the jury of the insignificance of plaintiff's conduct with respect to the issues and his theory of the case without the "assistance" of comment by the court on that specific element of the evidence.

The facts in a product liability case are often intermixed and interrelated when applied to the issues. It is important in such cases that the court refrain from commenting on and, in effect, giving judicial emphasis to a certain element of the evidence that is not a triable issue in the case. Otherwise, the jury may place more importance on that element of the evidence than it does on the issues which are being tried. Also, when a court comments on a specific element of the evidence that is not a triable issue in the case, it tends to distract the focus of the jury's attention from the issues stated in the issues instruction to that particular element of the evidence.

In addition, plaintiff's instruction No. 1 obviously refers to either the negligence of the plaintiff or misuse. To the extent it relates to the negligence of the plaintiff, it should not be given because it is misleading. Since the negligence of the plaintiff is not a triable issue in a product liability case, it does not appear in either the issues or the burden of proof instruction. (See IPI Civil Nos. 400.01, 400.02.) If a negative instruction dealing with plaintiff's negligence is given to the jury, it would implicitly engraft the false issue of plaintiff's negligence onto the issues and burden of proof instructions, and thus, it would be misleading.

■■ To the extent plaintiff's instruction No. 1 relates to misuse, the Illinois Supreme Court Committee on Jury Instructions recommends that no instruction on misuse be given. We agree with the reasons and conclusions of the Committee. (See IPI Civil No. 400.08.) Moreover, the issue of misuse arises in connection with plaintiff's proof of an unreasonably dangerous condition, or proximate cause, or both. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 431, 261 N.E.2d 305, 312; *Gallee v. Sears Roebuck & Co.* (1978), 58 Ill. App. 3d 501, 503, 374 N.E.2d 831, 834.) Thus, defendant's denial that the product contained an unreasonably dangerous condition which proximately caused plaintiff's injury raised the issue of misuse. (IPI Civil Nos. 400.00, 400.08, Comments.) However, by distinguishing "the propositions of this case" from anything "the plaintiff may have done * * * which may have contributed to cause his injury," plaintiff's instruction No. 1 would, in effect, tell the jury that misuse is not an element of any proposition in the case and that it will not bar plaintiff's right to recover. On this point, the specially concurring opinion states, "If plaintiff has proved all the propositions of his case, then misuse is no longer an issue." The problem with that statement is that it does not take into account the effect of the instruction. By virtue of the instruction, plaintiff's misuse would never become an element of any

proposition of plaintiff's case for the jury to consider because it is distinguished in the instruction from the propositions of plaintiff's case.

Further, the above analysis leads to another reason why plaintiff's instruction No. 1 should not be given in this case. Since the instruction begins "If you decide that the plaintiff has proved all the propositions of this case, then it is not a defense," the instruction does not effectively tell the jury anything useful. If a plaintiff has proved all the propositions of the case, then the verdict must be in favor of the plaintiff in any case unless an affirmative defense was raised. In the present case, no affirmative defense was raised. Thus, the instruction unduly emphasizes a single element of the evidence without any purposeful instruction to the jury. In this regard, the specially concurring opinion states that the form of plaintiff's instruction No. 1 is correct because IPI Civil Nos. 400.09 and 400.10 begin with the same wording. However, since they are not involved in this case, we do not address the approval or disapproval of those instructions.

The specially concurring opinion also places emphasis on a comparison of plaintiff's instruction No. 1 with IPI Civil No. 180.17. We do not find this comparison persuasive. IPI Civil No. 180.17 is a Structural Work Act case instruction. In those cases, the conduct of the plaintiff does not bar the plaintiff's cause of action. In a product liability case, however, the conduct of the plaintiff may bar his recovery if it amounts to misuse of the product. (*Williams*, 45 Ill. 2d 418, 431, 261 N.E.2d 305, 312; *Gallee*, 58 Ill. App. 3d 501, 502, 374 N.E.2d 831, 834; IPI Civil No. 400.00, Comment.) Thus, merely because an instruction relating to plaintiff's conduct may be proper in a Structural Work Act case does not mean that the instruction or a similar instruction is proper in a product liability case. That the two types of cases are significantly different is exemplified by the fact that they are treated in completely different sections of the IPI.

Lastly, with respect to the comparison of plaintiff's instruction No. 1 with IPI Civil No. 180.17, it must be noted that the IPI section for Structural Work Act cases (which includes No. 180.17) was included in the bound volume of IPI Civil published in 1971. The IPI instructions for product liability cases were first published in 1977, and significantly, they do not include an instruction similar to IPI Civil No. 180.17. We can only conclude that the Illinois Supreme Court Committee on Jury Instructions considered and rejected incorporating No. 180.17 or a similar instruction in product liability cases.

■■ We do not disagree with the statement in the specially concurring opinion that the "IPI is not the exclusive source of jury instructions" and that there are instances where an instruction not contained in IPI should be given. (See Ill. Rev. Stat. 1979, ch. 110A, par. 239(a).) However, that

principle does not detract from the significance of the fact that plaintiff's instruction No. 1 is not in IPI and that the IPI Committee apparently chose not to include such an instruction in the instructions for product liability cases. Moreover, plaintiff's instruction No. 1 is neither simple, impartial nor free from argument. (See *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 336, 250 N.E.2d 159, 164.) As a result, we do not believe the instruction complies with Supreme Court Rules 239(a).

Next, we address the issue involving the cross-examination of defendant's expert witness. Plaintiff's counsel informed the judge that he intended to use the expert witness' speech, set forth in the specially concurring opinion, to demonstrate his interest, bias, motive and prejudice. The judge ruled *in limine* that the speech could not be used for any purpose during cross-examination. This was reversible error.

■■ Expert testimony on matters not within common knowledge and experience is sometimes necessary to enable jurors to determine the factual issues submitted to them. However, the expert witness is usually a hired partisan. Moreover, it is unlikely that he could be successfully prosecuted for perjury on the basis of his opinion testimony. Thus, while the expert's opinion has the sanction of an oath, it lacks the substantial safeguard of truth that may be applied to the testimony of other witnesses. For these reasons, counsel must be given the widest possible latitude during cross-examination to demonstrate any interest, bias or motive of the expert witness to testify. *Cf. People v. Barr* (1972), 51 Ill. 2d 50, 51-52, 280 N.E.2d 708, 710; *People v. Garrett* (1976), 44 Ill. App. 3d 429, 436-37, 358 N.E.2d 364, 370.

■■ Here, a jury could conclude that the statements made by the expert witness before a group of engineers in a formal setting demonstrate an interest, bias or motive to testify favorably for the party calling him as an expert witness in a product liability case. Thus, rather than allowing plaintiff's counsel the widest possible latitude on cross-examination to establish the interest, bias or motive of the witness to testify favorably for defendant, the trial court unduly restricted the cross-examination. Since the credibility of the witness was crucial to the defense of the case, the error was prejudicial and necessitates a new trial.

However, the credibility of a witness is for the jury to determine. As a result, we do not reach any conclusion concerning the character of the statements made by the expert witness or the credibility of his testimony. Any such characterization or conclusion may or may not be made by a jury after seeing and hearing the witness testify.

Accordingly, the judgment is reversed, and the case is remanded for a new trial solely because of the error in refusing to allow plaintiff's counsel to use the expert witness' speech to impeach him. In a new trial,

the instruction designated herein as plaintiff's instruction No. 1 should not be given to the jury.

Reversed and remanded.

McGILLICUDDY, J., concurs.

Mr. JUSTICE WHITE, specially concurring:

Plaintiff-appellant, Rudolfo Sanchez, brought this strict product liability action against defendant-appellee, The Black Brothers Co., for injuries sustained to his right hand while attempting to clean a glue-spreading machine manufactured by defendant. A jury returned a verdict for defendant. On appeal, plaintiff raises the following issues:

> (1) whether the trial court improperly admitted evidence of contributory negligence;
> (2) whether the trial court erred when it refused plaintiff's instruction number one on contributory negligence;
> (3) whether the trial court erred when it refused to permit plaintiff to impeach the credibility of defendant's expert witness on the basis of a speech that the witness had given in May, 1977.

The glue-spreading machine in question was manufactured by defendant in April 1971, and was delivered to the Southern Door Company, plaintiff's employer, in late spring or early summer of 1972. A brief description of this machine follows. The machine has four rolls: a top doctor roll, a top applicator roll, a lower doctor roll, and a lower applicator roll. The top roll in the front of the machine is a doctor roll, and the top roll in the back of the machine is an applicator roll. When the machine is running in the forward direction, the top doctor roll is turning in or towards the machine in a clockwise manner, and the top applicator roll is turning toward the top doctor roll in a counterclockwise manner. The area between the top doctor roll and the top applicator roll when the rolls are moving in the forward direction is known as a nip point. An object caught in the nip point will be pulled into the machine by the rolls. The machine is equipped with a roll nip pivot guard to guard this nip point. This guard can be swung or pivoted up away from the machine, so that it is no longer in its protective position.

Other devices on this machine include a barrier guard located in front of and below the top doctor roll and an operating control bar. The operating control bar has handles on each side of the machine, and it determines whether the rolls on the machine are operating in the forward direction, in the reverse direction, or in neutral. When the control bar is pulled toward the operator, the machine operates in the forward direc-

tion. When the bar is pushed toward the machine, the machine operates in reverse. The operator must keep pressure on the bar to operate the machine in reverse, but when the machine is operating in the forward direction, the operator can take his hand off the bar and the machine will continue to operate in forward. In addition to these devices, there was a decal on the side of this machine with a set of cleaning instructions.

The machine in question was used in conjunction with a conveyor belt which fed wood into the machine, and the machine was sold with casters so that it could be moved out and away from the conveyor system. The cleaning process for the machine is easier when the machine is moved away from the conveyor system.

Plaintiff was employed by Southern Door Company to select and put lumber on the conveyor and had worked for that company for approximately six months prior to December 12, 1972, the date he was injured. Plaintiff did not speak English. The highest grade of school he completed was fifth grade, and that was in Mexico. According to plaintiff's testimony at trial, just prior to his injury, he was cleaning the machine by spraying water on the rolls with a hose. The machine, at this time, was to the left of the conveyor belt, and plaintiff was standing in front of the machine. Plaintiff testified that there was water on the floor, that he slipped, and that his right hand became trapped in the machine between the two top rolls. The roll nip pivot guard was not in the down or protective position at the time of the accident even though the rolls were turning. Plaintiff's testimony also indicated that he was not familiar with the operation of the machine.

Plaintiff's second amended complaint alleges that the glue-spreading machine was "in an unreasonably dangerous condition with regard to its acknowledged intended and foreseeable uses" and at the time it left the control of the defendant because the machine:

"a) Failed to incorporate a proximity switch electrical interlock for use in conjunction with the roll screen pivot guard which would shut off power to the rolls when the guard was not in its protective position.

b) Failed to incorporate a supplementary emergency stop and reversing device such as a pressure sensitized bar placed at a height which would keep the operator from falling into the rollers.

c) Required a cleaning operation which made it likely that water would accumulate in areas adjacent to the machine while the rolls were in operation."

Plaintiff claimed that one or more of the foregoing was a proximate cause of his injuries. Defendant denied that any of the claimed conditions of the glue spreader made it unreasonably dangerous, and further denied that any of the said conditions was a proximate cause of plaintiff's injuries.

## I

Plaintiff contends that the court below erred in admitting evidence which tended to show plaintiff was contributorily negligent. Specifically, plaintiff complains of: (1) testimony, over objection, by Mr. Steven Wood, chief engineer of defendant, as to the cleaning instructions supplied by defendant; and (2) testimony, over objection, by Mr. Ralph Barnett describing and explaining the eleven-point instructions for cleaning the glue-spreading machine that were on the machine itself. Barnett testified that step 11 is "the first time the operator has to put his hand on anything other than the operating safety (control) bar," and that the cleaning instructions require a person cleaning the machine to hold onto the bar while he cleans all parts of the machine. Furthermore, he stated that the cleaning instructions on the machine provide "an extremely efficient set of cleaning instructions which allow the operator to clean efficiently and safely." The importance of the evidence of the cleaning instructions was made clear to the jury in defendant's closing argument. Defense counsel argued, over objection, that when an operator cleans the machine, he should have his hand on the operator control bar, and that if plaintiff had had his hand on the bar and he slipped, he would not have become "entangled in that machine." A similar statement was made by defense counsel in his opening statement. Plaintiff also contends that defense counsel's cross-examination of plaintiff himself suggested contributory negligence on the part of plaintiff. Plaintiff was asked, over objection, whether he had his left hand on the operator control bar when he was putting water on the machine, and he answered that he did not remember.

Plaintiff asserts that contributory negligence is not a defense to a strict product liability action and evidence relating thereto is so immaterial, irrelevant and inadmissible as to require reversal. Under the law of Illinois, a plaintiff's contributory negligence is no defense in this type of action. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 427, 261 N.E.2d 305, 310.) However, it is also the law of this State that in strict product liability actions proof that the sole proximate cause of an injury was the conduct of some person other than the defendant is a defense and evidence thereof is admissible. (*Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013; *Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276; *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 274 N.E.2d 828; *Santiago v. Package Machinery Co.* (1970), 123 Ill. App. 2d 305, 260 N.E.2d 89.) Defendant contends that evidence introduced regarding the cleaning instructions for the glue spreader was admissible because it was materially related to defendant's theory that plaintiff's employer's negligent failure to instruct the Spanish-speaking plaintiff regarding the proper

procedures for cleaning the glue spreader was the sole proximate cause of the accident.

Plaintiff contends that defendant's representations regarding the issue of sole proximate cause were merely a subterfuge to allow the introduction of negligence concepts into a strict product liability action. *Santiago* provides a clear example of when the defense of sole proximate cause is applicable. In that case, after a verdict for the defendant, the plaintiff argued on appeal that the trial court erred in admitting evidence which allowed the defendant to interject the negligence of the plaintiff's employer. In affirming the decision of the trial court, the appellate court stated:

> "The instant case was tried on two counts—one charging negligence and the other charging strict liability in tort. If the plaintiff is to prevail, she must prove that her injuries were proximately caused by defendant's negligence, [citation], or by a condition of the product which was unreasonably dangerous and in existence at the time it left the defendant's control. [Citations.] Manifestly, then, the defendant could avoid all liability by proving that the *sole* proximate cause of the injury was the conduct of another. We find no error in the admission of evidence supporting this contention."
> 123 Ill. App. 2d 305, 312, 260 N.E.2d 89, 93.

In the case at bar, Black Brothers Co. denied that its glue spreader was the proximate cause of plaintiff's injury, thus making an issue of fact for the jury. Plaintiff argues that the intervening conduct of a third party cannot be the sole proximate cause of an accident if it is foreseeable. (See *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 334, 369 N.E.2d 1284, 1293, *aff'd in relevant part, rev'd in part* (1979), 76 Ill. 2d 154.) He contends that plaintiff's employer's failure to instruct plaintiff on proper machine cleaning procedures was foreseeable, and that such evidence would only improperly inject the negligence of both plaintiff and his employer into this strict liability action. The Illinois Supreme Court has defined foreseeability as "that which it is *objectively reasonable* to expect, not merely what might conceivably occur," and has said, "Questions of foreseeability, we believe, are ordinarily for a jury to resolve." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5.) The issue of proximate causation together with the subsidiary issue of foreseeability of the intervening conduct were before the trial court. I find no error in the admission of evidence on these issues.

In this regard, plaintiff also argued that all of the evidence which defendant represented as bearing on the issue of sole proximate cause clearly only went toward establishing plaintiff's alleged contributory negligence or the negligence of plaintiff's employer because the trial court ruled as a matter of law that neither plaintiff's nor plaintiff's employer's

actions or nonactions were the sole proximate cause of plaintiff's injuries. To support this contention, plaintiff points to (1) the trial court's refusal to give three jury instructions on the issue of sole proximate causation submitted by defendant, (2) the giving of plaintiff's instruction number three that "blame" on the part of the plaintiff's employer would not be a defense if plaintiff proved all the propositions of his case, and (3) a statement by the trial judge in chambers that "The employer's conduct in failing to adequately warn the plaintiff or in failing to adequately maintain and clean the machine can never be the sole proximate cause." Neither the trial court's rulings on jury instructions nor the statement of the trial judge, when read in the context in which it was made, amounted to a ruling on the issue of proximate cause as a matter of law as plaintiff contends.

## II

Plaintiff next contends that the trial court erred in refusing plaintiff's instruction number one. This instruction reads as follows:

"If you decide that the plaintiff has proved all the propositions of this case, then it is not a defense that the plaintiff may have done anything which may have contributed to cause his injury."

Specifically, plaintiff argues that the jury was bombarded with evidence of plaintiff's contributory negligence, and therefore, the trial court should have instructed the jury that contributory negligence was not in issue. I agree. Defendant elicited significant amounts of evidence which could suggest to the jury that plaintiff was contributorily negligent, and defendant argued to the jury that the accident would never have occurred if plaintiff had followed the cleaning instructions. A jury instruction was necessary to inform the jury that contributory negligence is not a bar to recovery in a strict product liability action in Illinois. See *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.

The purpose of jury instructions is *"to advise the jury as to the rules of law applicable to the evidence* so they may understand the relation of such rules to the evidence which they are considering." (Emphasis added.) (*McKinney v. Illinois Power Co.* (1960), 26 Ill. App. 2d 193, 204-05, 167 N.E.2d 249, 254.) Jury instructions should "clearly inform the jury of the issues presented, the principles of law to be applied and the necessary facts to be proved to justify a verdict." (*Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151, 156, 276 N.E.2d 65, 68.) The evidence introduced at trial of negligent conduct by plaintiff and his employer was admitted only to show that such conduct and not the alleged defects in defendant's glue spreader was the sole proximate cause of the accident. If evidence of this conduct fell short of proof that it was the intervening, sole proximate cause, then it should have no bearing on the question of defendant's liability. The parties agree that contributory

negligence is not a bar to recovery in a strict product liability action, but defendant strangely contends that the jury should not have been instructed on this provision of the law because "contributory negligence is not in issue in a strict liability case." Indeed, that contention augurs for the need to give the instruction. Without it the jury was left to figure for itself what effect to give to the welter of evidence of plaintiff's negligent conduct, all to the prejudice of plaintiff.

Defendant contends that the trial court's rerusal of plaintiff's instruction number one was not prejudicial because the other instructions given, when viewed as a whole, correctly state the law of the case. (See *Harris v. City of Granite City* (1977), 52 Ill. App. 3d 782, 365 N.E.2d 1034; *Schmidt v. Blackwell* (1973), 15 Ill. App. 3d 190, 304 N.E.2d 113.) I have reviewed all of the instructions given to the jury in the instant case, and I find none that would inform the jury that contributorily negligent conduct of plaintiff was irrelevant. An instruction on contributory negligence was necessary to prevent any evidence that might tend to prove contributory negligence on the plaintiff's part from unfairly prejudicing the jury against the plaintiff.

The Illinois Pattern Jury Instructions for the Structural Work Act support this conclusion. In actions under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, pars. 60-69) and in product liability cases, the common law defense of contributory negligence does not prevent recovery. (*Palier v. Dreis and Krump Manufacturing Co.* (1967), 81 Ill. App. 2d 1, 225 N.E.2d 67.) Illinois Pattern Jury Instructions, Civil, No. 180.17 (IPI Civil No. 180.17) (2d ed. 1971)) states that the following instruction should be given if there is evidence that the plaintiff contributed to cause the injury:

"If you decide that the plaintiff has proved all the propositions of his case under the Structural Work Act, then it is not a defense to the plaintiff's claim [under that count of the complaint] that some conduct on the [plaintiff's] [decedent's] part may have contributed to cause the [injury] [death]."

A similar instruction was needed here.

The trial court gave Illinois Pattern Jury Instruction 400.02 (IPI Civil No. 400.02 (1977 Supp.)) (defendant's instruction 11) informing the jury of the propositions plaintiff had the burden of proving:

"The Plaintiff has the burden of proving each of the following propositions [as to any one of the conditions claimed by the Plaintiff]:

First, that the condition claimed by the Plaintiff as stated to you in these instructions existed in the [glue spreader];

Second, that the condition made the [glue spreader] unreasonably dangerous;

Third, that the condition existed at the time the [glue spreader] left the control of the defendant;

Fourth, that the plaintiff was injured;

Fifth, that the condition of the [glue spreader] was a proximate cause of plaintiff's injuries.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. But if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the Defendant."

Plaintiff's instruction number one would have correctly informed the jury that if these propositions were proved, it was not a defense that plaintiff may have done anything which may have contributed to the injury. There are defenses in strict tort liability cases predicated upon conduct of a plaintiff; however, they do not render the instruction in question improper. The defense of misuse by plaintiff is not a separate issue, but is subsumed in the propositions plaintiff must prove. (IPI Civil No. 400.08, Comments; *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 431, 261 N.E.2d 305, 312.) If plaintiff has proved all the propositions of his case, then misuse is no longer in issue. The defense of assumption of risk is an affirmative defense. (IPI Civil No. 400.03, Comments; *Williams*, 45 Ill. 2d 418, 430, 261 N.E.2d 305, 312.) No such defense was raised here.

The instruction in question was not improper because the Illinois Pattern Jury Instructions on strict liability in tort do not contain a similar instruction. Supreme Court Rule 239(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 239(a)) provides: "* * * Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument." IPI is not the exclusive source of jury instructions, and plaintiff's instruction is "simple, brief, impartial, and free from argument." Furthermore, the form of plaintiff's instruction is similar to that of IPI Civil Nos. 400.09, 400.10. Both pattern instructions involve strict liability in tort, and both begin: "If you decide that the plaintiff has proved all the propositions of his case, then it is not a defense * * *." Therefore, the content and the form of plaintiff's instruction were correct.

I conclude that plaintiff's instruction number one was an accurate statement of the law of this case and that this instruction was necessary to prevent evidence of plaintiff's contributory negligence from having an unfairly prejudicial effect on the jury. To refuse to give it was reversible error.

### III

Lastly, it is contended that plaintiff on cross-examination should have been permitted to impeach the credibility of defendant's expert witness on the basis of a speech he had given.

In May 1977, Mr. Ralph Barnett gave a speech to a group of engineers on the manner in which an expert testifies in court. During that speech, Mr. Barnett stated, *inter alia*, that:

"The way I counteracted the thing, I used another technique. I used the technique as [*sic*] science as a foreign language. I made a statement to the attorney that absolutely nobody could understand. Now, what it amounts to, it's going to terminate the cross examination, and it's going to terminate it in a hurry.

*I want the jury to understand what I say when I feel there are certain conditions. Under direct examination, the jury understands everything that I say. Under cross examination, there are some things I will allow the jury to understand and there are some things which I will not allow the jury to understand.*

If you don't want the jury to understand something, then what you do is you answer the question precisely, you see. If somebody is working with a form of inertia, why I use a form of inertia. I say, 'Do you mean the second bolt above the first bolt,' you know. Just get into something which is a very precise way of saying something.

The interval of minus infinity to plus infinity of X times X, $X^2$, and you know the—no one is going to be able to do much with that kind of thing.

And he says, 'Can you simplify it?' You say, 'See, there's too much simplification already. This is the only way that I can state it to you so there will be no misunderstanding.' " (Emphasis added.)

The bias or prejudice of a witness is always relevant (81 Am. Jur. 2d *Witnesses* §547 (1976)), and evidence "elicited on cross-examination or offered as impeachment is admissible if it tends to show a witness' bias and lack of credibility." (*People v. Garth* (1975), 31 Ill. App. 3d 716, 719, 334 N.E.2d 359, 362.) Evidence of Barnett's speech, if believed by the jury, would tend to show his bias in favor of a party calling him to testify, in this case defendant. In evaluating Barnett's veracity and the weight to be given to his testimony, the jury was entitled to know of the speech.

The cases of *Chicago & Eastern Illinois R.R. Co. v. Schmitz* (1904), 211 Ill. 446, 71 N.E. 1050, *Plambeck v. Chicago Rys. Co.* (1920), 294 Ill. 302, 128 N.E. 513, and *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 203 N.E.2d 460, relied upon by defendant are clearly distinguishable. None of them involves impeachment on the basis of a bold prior statement such as we have here that in effect the witness fools jurors when he testifies on cross-examination by limiting their understanding of the case to what he wants them to know. Mr. Barnett was a critically important witness. He testified, among other things, that the glue-spreading machine was not unreasonably dangerous although it was not

equipped with a proximity switch and that the machine was not unreasonably dangerous when it is being cleaned. Because the evidence supplied by Mr. Barnett went to key questions to be resolved by the jury, and because he was the sole expert witness called by defendant, I believe that the trial court committed reversible error in refusing to allow the plaintiff to impeach Mr. Barnett on the basis of his speech.

For the reasons stated above, I would reverse the judgment of the circuit court of Cook County and remand the cause for a new trial.