MICHAEL DOTTO, Plaintiff-Appellant, v. DANIEL OKAN, Defendant-Appellee.

First District (3rd Division) No. 1—92—2382

Opinion filed February 1, 1995.

William S. Wojcik, of Chicago, for appellant.

Sandra Young, Paul V. Kaulas, and John P. O'Malley, all of Purcell & Wardrope, Chartered, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

This is a negligence action in which plaintiff, Michael Dotto, sustained serious injuries when he fell from a motor boat being operated by defendant, Daniel Okan, on Lake Paw Paw in the State of Michigan on July 14, 1984. Judgment was entered on a not guilty jury verdict, from which plaintiff has appealed. We reverse the judgment and remand for a new trial or further proceedings as warranted.

Plaintiff has raised six issues on appeal. We address, however, only the issue of whether the trial court committed reversible error when it barred plaintiff's expert witness from testifying. We agree with plaintiff that the trial court committed reversible error, which entitles plaintiff to a new trial.

At the time of the occurrence there were five people in the boat,

all of whom were eyewitnesses to what happened. Plaintiff, defendant, and two of the other passengers testified at trial. Generally, their composite testimony evinces that while the boat was in a stationary position, defendant was at the helm and plaintiff sat in a carpeted area in the front of the boat. As the boat remained stationary, there was a conversation between plaintiff and defendant, and plaintiff got up and turned the steering wheel to the left. Plaintiff then went back to his prior position and told defendant to "gun it." Defendant made a series of left turns at high speed.

As the boat was circling toward the left, plaintiff leaned out of the left side while holding onto the rail with his left hand; he placed his right hand in the water and splashed water on another passenger. Meanwhile, defendant turned the steering wheel sharply back towards the right. At this point plaintiff fell out of the boat, and the boat continued in a right turn. The back of the boat "swung around" and went over plaintiff, and he got caught in the operating propeller blades. As a result, plaintiff's "arms were mangled" and "very badly chopped up."

There was disputed testimony as to whether the boat hit a wave just before plaintiff fell from the boat. Plaintiff testified, however, that it was defendant's sharp right turn while making circular maneuvers to the left that caused him to fall from the boat. Defendant testified that he "didn't actually turn right, I straightened the boat out." Defendant further testified that "it never made a turn, though. It was straight." Defendant admitted that it would not be safe for a boat operator to make a right turn if a person in the front of the boat was leaning toward the left side during a hard left turn, and that such a passenger would be "vulnerable."

Prior to trial, plaintiff's expert witness, Scott Anderson, reviewed the depositions and physically inspected, measured and photographed the boat. During the course of the trial, plaintiff called Anderson to testify as an expert witness. Although defendant stipulated that Anderson was an expert in the field of mechanical engineering, the court barred Anderson from testifying. While plaintiff's counsel was attempting to explain to the trial court the nature of Anderson's testimony, the court stated: "Gentlemen, I'm ready to rule. You said it, okay? This is like a reconstruction expert. You have eyewitness testimony. The witness is barred." The trial court also refused plaintiff's request to reserve its ruling as to whether or not Anderson could testify as a rebuttal witness. The trial court stated: "I'm not reserving any ruling. I've made my ruling." Plaintiff made an offer of proof, but the trial court maintained its ruling which barred Anderson from testifying.

We agree with plaintiff that the trial court improperly barred Anderson from testifying. The rule barring a reconstruction expert from testifying merely because there are eyewitnesses to the occurrence is an anachronism which must be allowed to rest in peace rather than being resurrected. (See *Palmer v. Craig* (1993), 246 Ill. App. 3d 323, 327-28, 615 N.E.2d 1294, 1296-97; *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 681, 547 N.E.2d 1345, 1356.) The order of the day for the admission of all expert opinion evidence is simple: Expert testimony is admissible if the proffered expert is qualified as an expert by knowledge, skill, experience, training, or education in a field that has at least a modicum of reliability, and the testimony will tend to assist the trier of fact to understand the evidence or determine a fact in issue. The general acceptance test for determining the admissibility of scientific evidence is no longer the proper standard for the admission of expert testimony. In addition, the basic standard of relevance is a liberal one, and the focus must be solely on principles and methodology, not on the conclusions that they generate. (*Daubert v. Merrell Dow Pharmaceuticals* (1993), 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (on remand (9th Cir. 1995), 43 F.3d 1311); *Augenstein*, 191 Ill. App. 3d at 681, 547 N.E.2d at 1356.) Moreover, expert opinion testimony is admissible even though a lay person would also have some knowledge of the subject matter and even though the expert's opinion relates to an ultimate issue in the case. *Ketchum v. Dura-Bond Concrete, Inc.* (1989), 179 Ill. App. 3d 820, 831, 534 N.E.2d 1364, 1371; *Carlson v. City Construction Co.* (1992), 239 Ill. App. 3d 211, 239-40, 606 N.E.2d 400, 417-18; *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 120, 273 N.E.2d 809, 810-11.

■ Here, defendant stipulated that Anderson was an expert in the field of mechanical engineering. The record reveals that Anderson's testimony would have explained the type of maneuver necessary to produce a force sufficient to propel plaintiff's body out of the boat and into the water; it would have explained why the boat's propeller blades could not have struck plaintiff in the water unless defendant had made a sharp right turn while still in the process of turning left; and Anderson would have testified that the propeller blades could not have struck plaintiff in a straightening out maneuver, thereby refuting defendant's testimony. In addition, aspects of Anderson's testimony involved an explanation and analysis of centripetal (*i.e.*, directed toward the center, as opposed to centrifugal) force, lateral acceleration and forces of motion, which are plainly theories accepted by the mechanical engineering community. (See generally *Daubert v. Merrell Dow Pharmaceuticals* (9th Cir. 1995),

43 F.3d 1311.) These explanations would have tended to assist the jury in resolving conflicting testimony of some of the witnesses.

It is plain that based upon the test for the admission of expert opinion testimony, the trial court erred in barring Anderson from testifying. In addition, while we recognize that expert witnesses are hired guns and ordinarily not disinterested witnesses, the day has come when many if not most major cases are decided solely on the bases of the opinions of expert witnesses. (See *Taylor v. Kohli* (1994), 162 Ill. 2d 91, 642 N.E.2d 467; *Sanchez v. Black Brothers Co.* (1981), 98 Ill. App. 3d 264, 271, 423 N.E.2d 1309, 1315.) Moreover, whether or not we acknowledge it judicially, the reality is that today jurors not only rely on but in most instances expect to hear expert witnesses testify in jury cases. Thus, improperly barring an expert witness from testifying will, most likely, wrongfully take the heart out of a party's case or defense. The present case is a good example of this perception. Here, it is manifest that by barring the plaintiff's expert from testifying, the trial court significantly affected the plaintiff's ability to prove his theory of the case. It follows that the trial court's ruling was reversible error.

■ In addition, on appeal but not at trial, defendant contends that Anderson's testimony was properly barred because plaintiff failed to respond to defendant's Rule 220 interrogatories. (134 Ill. 2d R. 220.) Contrary to defendant's contention, however, the record shows that in March of 1991, 19 months prior to trial, plaintiff disclosed to defendant that Anderson would be an expert witness pursuant to Rule 220, and that defendant was given a copy of Anderson's report in compliance with Rule 220. Also, the offer of proof made by plaintiff shows that Anderson's testimony was consistent with the opinions expressed in his report. Moreover, defendant was given ample opportunity to take Anderson's deposition prior to trial, but opted not to do so. Defendant's contention on appeal is therefore untenable.

Accordingly, the judgment appealed from is reversed and the case is remanded for further proceedings.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.